SARAH L. ROBERTSON et al., complainants,

*v.*

CRITERION CONSTRUCTION COMPANY, a corporation, et al.,
defendants.

[Decided February 10th, 1928.]

*Messrs. McCarter & English,* for the complainants.

*Mr. Merritt Lane,* for the defendants.

BACKES, V. C.

The bill is to rescind an executed contract to exchange properties—the complainant corporation's cottages at Deal for the defendant corporation's apartment house in East Orange. The trade was made by Sarah L. Robertson, owner of the complainant company, and she charges that she was induced to make it by false representations of the Lunsky brothers, owners of the defendant corporation, as to the value of the apartment house, its rental value and the manner in which it was to be constructed; it was not then finished. The defendant Bowes, a broker, previously retained by both parties, brought about the deal. Each of the parties put a fancy trading price on his property; there was the usual dealer's talk; each knew before the exchange was consummated what he was getting, and it is an open question which of the two got the short end. The complainant says she did;

that she was an inexperienced, confiding woman, and was duped in relying upon the representations of the two builders and the broker, who schemed to cheat her. The sympathetic ear of equity is always enlisted by the cry of the weak, and it is compassionately extended to the weaker sex in their dilemmas, but measuring this woman's business capacity by her conceit as a trader, there was no inequality. She is of the forward type, self-assured and sharp-witted, falling somewhat short of her own estimate, with no little experience in handling real estate, and her grievance must be judged as man to man. Confidence in her plea that she was wronged is, at the outset, shaken by the fact that after she says she knew the representations to be false, and after, as she said, she got a "rotten" deal, she traded the apartment house for another, and withdrew from that contract, by consent, because she again had been deceived, as she claims. And faith in her complaint is challenged by the fact that as it was originally presented she charged only fraudulent representations in respect of the value of the apartment house, and the rental value, and later, as if an afterthought, she amended her bill and added the charge of false representations concerning the construction of the apartment house as a completed structure. The bill was filed May 1st, 1925—the amendment was made the following January at the hearing. In the meantime, on June 23d, the bill was amended by adding the "(f)" false representation hereafter noted. These late additions of charges, which must have been known to the complainant when she first came to court, if they then grieved her, and her careless handling of the truth on the witness-stand, give the impression that she was not unwilling to resort to any expedient to win a decree.

Passing to the meritorious question. The misrepresentations alleged in the bill as originally drawn are—(a) that the apartment house was worth $45,000 more than the property of complainant; (b) that the apartment house could be sold for $154,000; (c) that the annual rent obtainable for the aparament houses was $16,800; (d) that each room of the apartment house would rent for $25 a month, and (e) that complainant would be able to pay $4,800 a year to reduce

a certain mortgage held by a building and loan association, and, in addition, would realize a profit of over $3,000, and that the apartment would be completed in October, 1924. By amendment of June 23d, 1925, this was added—(f) that similar apartment houses in the city of East Orange in the vicinity of said apartment house were, at the time of the transaction, renting for $25 per month per room. The representations are in a way substantiated by Mrs. Robertson and two of her friends, and in the sense in which they are related by them, they are denied by the Lunskys and the broker Bowes. The Lunskys put their property in at $150,000, subject to mortgages; Mrs. Robertson hers at $90,000, subject to mortgages. Each party knew that his own was not his cash sale price. Mrs. Robertson's not by $15,000. Neither was deceived that the other's was not a trade value, and each judged for himself after an inspection of the other's property. Any one in his ordinary senses would have realized that the Lunskys, if they claimed that their property was worth $150,000, or $45,000 more than Mrs. Robertson's, were indulging in shop talk. Surely she could not have thought they were making a gift to her of that excess. And so with the claim that Bowes, her broker, told her that the apartments could be sold for $154,000, which he denies making. Now, as to the prospective rentals. The total amount of rentals at $25 per room per month would have yielded the sum of the alleged representation, and $25 per month per room was a fair estimate at that time of high rentals, and other apartments in the neighborhood were bringing that amount, and the prospects were, and the reasonable expectation at that time was, that the annual yield would be as represented, and Mrs. Robertson, realizing that the representations were not guarantees, satisfied herself by a personal investigation. The rental income was problematical, depending upon the real estate boom then on and the continuance of the demand for apartments, of which there had been a scarcity, and it was so understood. Each took the other's property, trusting that he would not be disappointed in his own judgment. There was no misrepresentation in this respect of an existing fact or of facts

in the future. The principle of law on this subject, in its variety of application, is stated, and supported by authority in *Wise* v. *Fuller, 29 N. J. Eq. 257:* "It may be said, generally, an actionable misrepresentation consists in a false statement respecting a fact material to the contract, and which is influential in producing it. Statements of value made by a vendor during the negotiation between the parties, although known to be excessive, do not ordinarily constitute a warranty of a fraud. A mere expression of opinion as to value, although the amount stated is known to be excessive, is not a fraud, unless the person making it knew at the time that in consequence of the relations of trust and confidence existing between himself and the person to whom it was made, he would rely upon it and be controlled by it. A purchaser is not entitled to relief against a vendor for a false affirmation of value, it being deemed his only folly to credit a nude assertion of that nature. Besides, value consists in judgment and estimation, in which men necessarily differ. But a remedy will be against a vendor for falsely affirming that a greater rent is paid for the estate than is actually received, for that is a fact within his own knowledge. And so a willful misrepresentation by a vendor affirming that the income from his public house has been greater than in truth it was, is an actionable fraud. The fact that a price in excess of its market value is paid for a thing, standing alone, is never evidence of fraud. Mere inadequacy of consideration will never substantiate a charge of fraud. In equity, inadequacy of value is, in general, of itself, no ground for impeaching a contract, but, with other circumstances of suspicion, it may constitute an element of proof in establishing fraud."

Passing then to the representation alleged by the amendment to the bill to have been false, "that all materials being used in the construction of the apartment house were the best obtainable, that the work had been done, and was being done, in a workmanlike and first class manner and by competent mechanics, and in compliance with every requirement of the building code of the city of East Orange, and with every requirement of the tenement house laws of the State of New

Jersey, and the rules and regulations of the state board of tenement house supervision, and that the said apartment house was being constructed in accordance with certain plans and specifications on file in the office of the building inspector of East Orange, and upon which a permit was issued on February 13th, 1924, by the said building inspector for the erection of the said apartment house, and, in particular, that the plastering and lathing work, the electrical work, the plumbing and heating, and the drainage was being done and installed in a workmanlike manner and in accordance with the laws, codes and rules above referred to, and that screens were being placed upon the windows in accordance with said plans and specifications, and that a parapet was being built upon the roof in accordance with the said plans and specifications, and in accordance with the laws, codes and rules above referred to."

Before the trade was agreed upon the apartment house was up; the interior was being finished. Mrs. Robertson saw and examined it, and before the closing she had the benefit of the judgment of some builder friends, who also examined it, as to the stability of the structure, and she expressed her satisfaction except as to five items; some radiators and lighting fixtures were not in place, a door was not in place on the dumbwaiter shafts, the cellar was filled with debris, and the furnace was not covered with asbestos. Her claim that she had been deceived because, as she says, the building was to be according to plans and specifications on file with the building department of the town, and that it was to have a parapet, is disingenious. There were plans and specifications filed by a previous owner, which the Lunskys followed generally, but deviated from, using their own taste and judgment as builders, and, as they had planned, they built. There was no deviation from their preconceived plans in finishing the building after they had bargained to trade it to Mrs. Robertson. They had built without parapet; the exterior was completed when Mrs. Robertson first saw the building, and she saw it was not a parapet-type building; if she and her builder friends ever did notice that it was or was not. Mrs. Robertson says she

was in a measure persuaded to make the trade by the blueprints shown her. These blueprints, if she ever saw them, showed a parapet type of building, but that they had any influence on her is not perceivable. She took the apartment as it stood, "as is," and it is quite apparent that the deviation played no part in the transaction, and that the cry of fraud in this respect is insincere and sham. It is in keeping with her loose testimony that the Lunskys had represented that the building would have a parapet, although it was obvious that the exterior was finished and that it was not that style of structure. And so with the heating system. The specifications filed by the former owner called for a vapor system; the Lunskys put in a one-pipe steam system. It had been contracted for before they dealt with Mrs. Robertson, and it was in place according to contract when the deal was closed. Mrs. Robertson saw it. She at that time had no knowledge of the old specifications, and, consequently, could not have been misled. As to the screens: It appears by Mrs. Robertson's testimony that she adjusted this dispute long before she took title by an allowance to her of $500 out of the commissions due from her to her broker, Bowes. As to the representation that the construction of the apartment was to be in a workmalike manner (and it is not disputed that it is substantially constructed), the fact that some cracks developed in the wall and in some places the plaster did not reach the floor or the floor shrunk away from the wall, requiring molding, the absence of a support under the main stairway, that a marble post was disintegrating, and other minor things that Mrs. Robertson dwells upon as proof of misrepresentation to warrant rescission, such imperfections occur in every new structure no matter how otherwise perfect the workmanship may be. At the time the bargain was made the work had not been fully performed; the promise to finish in a workmanlike manner was contained in the contract, and the remedy for such slight infraction of the contract is by an action at law upon the collateral undertaking. Complaint is made of the inadequacy of the heating and hot-water system. If it be a fact it may be due to faulty operation. It is not proved

that the systems are not modern and adequate. There is no proof that there was any attempt to skimp the construction in finishing the apartment house after the bargain was made. The construction was in compliance with the building code and was so authoritatively certified for occupancy by the local authorities. The misrepresentations are not established.

But if it be assumed that the complainant was deceived into making or carrying out the contract of exchange by the representations, and if we assume that they were false, the fraud cannot avail the complainant because of her conduct. After she knew that all the representations she now relies upon for relief were false, she entered into a contract with one Decker to exchange her apartment for his. And, also, it appears that the Lunskys did not have the apartment·house ready for occupancy at the stipulated time, and because of this default they, in December, 1924, guaranteed the rent of fourteen of the apartments at $25 per room per month until May 1st, 1925, and long after the complainant knew, as she says, the representations were false, she insisted upon the payment of the guaranty. Furthermore, she knew early in March that the representations were false, if they were false, and she did not file her bill until May 1st. Such conduct is not only an election to affirm the contract, but it is highly persuasive that the complainant was not fraudulently imposed upon. The law is well settled in this state that to rescind a contract for fraud the injured party must act promptly after discovering the fraud, and that if he elects to affirm he cannot have a second election to disaffirm, and that he will be held to affirm unless he acts promptly to disaffirm. In *Dennis* v. *Jones, 44 N. J. Eq. 513,* Chancellor McGill, in speaking for the court of errors and appeals, said: "It is the rule that the defrauded party to a contract has but one election to rescind, that he must exercise that election with reasonable promptitude after discovery of the fraud, and that when he once elects he must abide by his decision. Delay in the rescission of the contract is evidence of the waiver of the fraud, and an election to treat the contract as valid. So, payments of purchase-money, after knowledge of

the fraud, are evidence to the same effect. And so, also, is the continued dealing with the property purchased and in reference to the fraudulent transaction, as if the contract were subsisting and binding." In *Faulkner* v. *Wassmer, 77 N. J. Eq. 537,* Mr. Justice Garrison says that the rule of *Dennis* v. *Jones* is so clearly stated by Chancellor McGill "that in actual practice the only question likely to arise is whether or not the delay was such as to warrant its application, *i. e.,* whether the vendee's failure to act extended beyond the period within which one would naturally act who knew that to act effectively he must act promptly. The question in itself is not peculiar to this class of cases; it is present in all cases involving a reasonable time, concerning which, it is admitted, that no hard and fast rule obtains, and also that the difficulty that exists in cases that lie close to the line disappears with the lapse of time that has been permitted to intervene. Thus the question whether a landowner, who is under a duty to make repairs upon notice, is in default on the very day he had notice or the day after, may present difficulties that entirely disappear if he has suffered weeks and months to elapse. The case before us is of this latter character in that an election that could in reason have been made within a few days, or, at most, a few weeks after the right to make it arose, was, without any adequate excuse that was consistent with promptitude of action, delayed for months. It is precisely this conduct that [as we decided in *Dennis* v. *Jones* and *Clampitt* v. *Doyle*] affords plenary proof of an election to abide by the contract, which is irrevocable." The principle of these cases was applied in *Arnold* v. *Hagerman, 45 N. J. Eq. 186;. Tierney* v. *Parker, 58 N. J. Eq. 117; Clampitt* v. *Doyle, 73 N. J. Eq. 678; Reed* v. *Benzine-Ated Soap Co., 81 N. J. Eq. 182.* It is controlling here.

The bill will be dismissed.